**TRUSTEES OF the PROPERTY OF PENN CENTRAL TRANSPORTATION COMPANY et al., Plaintiffs,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**Civ. A. No. 76–2.**

Special Court
Regional Rail Reorganization Act.

Nov. 22, 1978.

Charles A. Horsky, Covington & Burling, Washington, D. C., for plaintiffs trustees of the property of Penn Cent. Transp. Co.

Joseph J. Connelly, Goodman & Ewing, Philadelphia, Pa., for plaintiffs United New Jersey R. & Canal Co., New York Connecting R. Co., and Philadelphia, Baltimore & Washington R. Co.

Herbert G. Schick, MacCoy, Evans & Lewis, Philadelphia, Pa., for plaintiffs Philadelphia and Trenton R. Co., Union R. Co. of Baltimore, and The Northern Cent. R. Co.

Jerome K. Walsh, Jr., Walsh & Frisch, New York City, for plaintiff Trustee of the Pittsburgh, Fort Wayne and Chicago R. Co.

Laurence Z. Shiekman, Kerr, John G. Harkins, Jr., and Alexander Kerr, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant Consolidated Rail Corp.

Cary W. Dickieson, U. S. R. Ass'n, Washington, D. C., for intervenor U. S. R. Ass'n.

John H. Broadley, Sp. Litigation Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for intervenor U. S.

Before FRIENDLY, Presiding Judge, and WISDOM and THOMSEN, Judges.

FRIENDLY, Presiding Judge:

This is a sequel to our earlier opinion in this action, 421 F.Supp. 1055 (1976), familiarity with which is assumed. We there denied an application by the Penn Central Trustees to direct ConRail to deposit in

---

escrow, pending determination of this action, proceeds ConRail had received in cash and the cash equivalent of what it would receive in the form of credits or offsets from its transfer of the Northeast Corridor properties (NEC) to Amtrak on April 1, 1976, but postponed final decision on the Trustees' claim to a "pass through." An amended petition was later filed. This raised a similar question with respect to the pass through of sums paid for off-corridor properties which ConRail had transferred to Amtrak on April 1, 1976. It added as petitioners the trustees of other bankrupt railroads and two other transferors which had participated in these transfers. The United States and the United States Railway Association were permitted to intervene.

There are a few new facts. The off-corridor properties were purchased for cash. The purchase price of $3,897,778.00, due April 1, 1976, was not paid by Amtrak until December 15, 1976, for a total of $4,147,865.67, the excess representing interest and penalties. As of December 1, 1977, ConRail had set off against the $86,365,950.00 due for the NEC properties as of April 1, 1976, $29,981,960.19 against principal and $9,328,783.86 against interest. In addition Amtrak has paid in cash $10,795,743.75 on account of principal and $449,163.60 on account of interest.

Both sides now argue in a much lower key than when the case was first before us. Plaintiffs do not contend that a pass through is required either by the Rail Act or by the Constitution. Perhaps more surprisingly, ConRail does not contend that we lack power to order a pass through on the facts here, as we directed in *New York Dock Railway v. Consolidated Rail Corp.*, Sp.Ct.R.R.R.A., 434 F.Supp. 1245 (1977).[1] We need not consider the propriety of ConRail's concession since we see no sufficient reason for ordering a pass through.

As noted in our earlier opinion, 421 F.Supp. at 1060 n. 7, 1059 n. 6, and now conceded by the plaintiffs, the Constitution does not prevent Congress from ordering the conveyance of property to ConRail for reconveyance to Amtrak, *Berman v. Parker*, 348 U.S. 26, 33–36, 75 S.Ct. 98, 99 L.Ed. 27 (1954), or require immediate payment to the transferors so long as the ultimate provision of fair compensation is assured, *Sweet v. Rechel*, 159 U.S. 380, 404, 16 S.Ct. 43, 40 L.Ed. 188 (1895); *Regional Railroad Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Plaintiffs' primary complaint concerns the disparity between sales directly to profitable railroads, states or other responsible purchasers under § 303(a)(2), where § 209(f) authorizes us to distribute to the transferors income and principal of the cash payments made by purchasers, and the absence of any similar pass through in the case of the properties where ConRail was simply a conduit in a sale to Amtrak. There is, and can be, no claim of discrimination between transferors as such. Many of the plaintiffs here have transferred property to profitable railroads, states or other responsible purchasers and have received the same treatment as other transferors who have done so. The contention is rather that, even though Congress was not obliged to accord a pass through at all, it is inequitable that the pass through provided in the case of other sales pursuant to the Rail Act should not exist in the case of sales which were to Amtrak in fact if not in name. Plaintiffs also argue that, apart from this difference in treatment, it is inequitable that the beneficiary of a condemnation who immediately receives cash or its equivalent should be allowed to retain these for the period, in this case inevitably long, needed to determine the just compensation to which the condemnees are constitutionally entitled.

Although these arguments have some force, they ignore the unique characteristics of Amtrak. While the Rail Passenger Service Act of 1970, 45 U.S.C. § 501 *et seq.*, which created it provides that Amtrak shall be "a for profit corporation" and not "an

---

1. Our opinion in the *New York Dock Railway* case made clear that our action was based on the special facts there present and was "not intended to be a precedent for other situations", 434 F.Supp. at 1249.

agency or establishment of the United States Government," 45 U.S.C. § 541, it is a corporation of a very special sort. Of its seventeen directors, only seven are elected by the stockholders; the others are the Secretary of Transportation, the president of Amtrak, and eight members appointed by the President with the advice and consent of the Senate, 45 U.S.C. § 543(a). Its basic operating plans are determined not by its board of directors but by the Secretary of Transportation, 45 U.S.C. §§ 521–22, with elaborate provisions for reports to the President and the Congress, 45 U.S.C. § 548, see also Title VII of the RRRRA, 45 U.S.C. § 851–54. Federal financial assistance was provided from the outset, 45 U.S.C. §§ 601 and 602, and has continued on an increasing scale, including a special provision, 45 U.S.C. § 601(a)(1)(3), "for the payment of the additional operating expenses . . . which result from the operation, maintenance, and ownership or control of the Northeast Corridor, pursuant to Title VII of the Railroad Revitalization and Regulatory Reform Act of 1976 . . .," a part of which must be the portion of maintenance and other expenses attributable to ConRail freight service but not being paid because of the offsets to which ConRail is entitled under the purchase agreements. The "for profit" phrase in 45 U.S.C. § 541 has turned out to be a legal description devoid of practical content. Total grants by the United States to Amtrak for the fiscal year ending September 30, 1978 were $646,500,000, of which not more than $488,500,000 was available for operating losses. Department of Transportation and Related Agencies Appropriation Act, 1978, Pub.L. 95–85, 45 U.S.C. § 851. We can likewise take official notice that any payments to the plaintiffs now required of ConRail would have to be either at the expense of its capital improvement program or financed by further appropriations.

The transfer of the NEC and other properties from ConRail to Amtrak was thus not a purchase in the ordinary sense but a division of rights in the conveyed properties between two governmentally supported corporations in a manner designed to effectu-ate the transportation plans of Congress. Without the transfer ConRail would have had "title" subject to Amtrak's right of use for passenger service; after the transfer Amtrak had "title" subject to ConRail's right of use for freight service. The pass through of payments by Amtrak for the NEC and other properties would amount in practical effect to an advance payment *by the United States* on whatever is ultimately payable by it as just compensation. This would likewise be true if ConRail were to be required to pay the plaintiffs the equivalent of the credits and offsets provided for in the purchase agreements. In this respect the pass through here sought differs significantly from the pass through of amounts paid by profitable railroads, states or other responsible purchasers. It was thus quite understandable that, as recounted in our previous opinion, 421 F.Supp. at 1057–58, the Senate and House conferees stated, with reference to the agreements that were then under negotiation between ConRail and Amtrak and were ultimately made, that they "do not intend that either ConRail or Amtrak should be required to pay any funds or properties to the present owners of the Northeast Corridor rail properties for acquisition of such properties." Conference Report No. 94-941, 94th Cong.2d Sess. 6 (1976), see 421 F.Supp. at 1057-58 n. 5. We are unable to follow plaintiffs' arguments that the conferees did not mean what they rather plainly said.

Remarks in a conference report on an appropriations bill do not, of course, have the force of law, cf. *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), and we could not properly give effect to them if they ran counter to specific provisions of the Rail Act. Admittedly they do not and we may thus properly look to them as reinforcing our own belief that equity does not require a pass through. Since we rely on the Conference Report only as a reinforcement and it is plain that the conferees would have taken the same view with respect to off-corridor properties if the issue had been before them, we find no merit in the contention of the Trustee of

the Property of Pittsburgh, Fort Wayne & Chicago Railway Company that, even if we conclude against a pass through with respect to the NEC properties, a different result should be reached with respect to him. We likewise see no force in contentions based on Amtrak's having made the October, 1977 installment payment in cash.

The complaints are dismissed.